**Manuel Rodriguez ZAMBRANO and Mario C. Garza, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44645.**

Court of Criminal Appeals of Texas.

April 12, 1972.

---

1. Art. 1.15, V.A.C.C.P., as amended, was not in effect at the time of this trial.

———◆———

Jerrold Davidson, of Galindo & Davidson, Brownville, for Manuel Rodriguez Zambrano.

Melchor Chavez, of Chavez & Branard, Harlingen, for Mario C. Garza.

F. T. Graham, Dist. Atty., and Joel William Ellis, Asst. Dist. Atty., Brownsville, and Jim D. Vollers State's Atty., Robert A. Huttash Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

These are appeals from convictions for the offenses of rape upon a fourteen-year-old girl. The jury assessed the punishment of each appellant at fifty years.

It is contended by both appellants that the court erred in not granting a motion for severance made by a co-defendant Castillo.

The record reflects that at approximately nine o'clock in the evening the prosecutrix and her eighteen-year-old date, Dan Bramlett, parked at Horseshoe Lake some three or four miles south of Harlingen. Within five or ten minutes Garza and Zambrano, the appellants, and Castillo drove up and parked behind Bramlett's car. The three got out of their car and asked to borrow a jack from Bramlett. When he opened the trunk of his car, Garza pulled a knife and threatened to kill Bramlett if the girl did not get out so that the three could have intercourse with her.

One of the men held the knife on Bramlett while the other two took the girl to the side of the road, had her disrobe and both had intercourse with her. One of the two men returned and traded places with the man who was holding the knife on Bramlett. The third man then went to the side of the road and had intercourse with the girl. After this they all got in the car and drove around the lake area for quite some time. While they were riding, Bramlett saw a pistol in the hand of one of the men. They then returned back to the same area where they had first parked. The three men then followed somewhat the same procedure as before and the three had intercourse with the girl again while Bramlett was being guarded with the knife.

When an opportunity presented itself, Castillo offered to help Bramlett and the girl escape. He had intercourse with the girl again, this time with her consent. Bramlett and the girl then ran through a muddy field to a house where the girl was furnished a dress and officers were called.

Later that night Garza and Zambrano were arrested. Castillo was apprehended and arrested two days later.

The record reflects that the jury assessed Castillo's punishment at six years and he did not appeal.

Did the court err in refusing to grant Castillo's motion for severance? Since Castillo did not appeal, he is, therefore, not

complaining. Neither Garza nor Zambrano filed a motion for severance.

All three defendants had prior criminal records and no statutory grounds for severance is shown, and a mandatory severance was not required under Article 36.09, Vernon's Ann.C.C.P. Robinson v. State, Tex.Cr.App., 449 S.W.2d 239. The matter is left to the discretion of the trial court.

On October 26, 1970, the defendants were arraigned and Castillo refused to plead. The judge entered a plea of not guilty for him in accordance with Article 26.12, V.A.C.C.P. Zambrano and Garza entered pleas of not guilty. A jury was then selected.

The next morning, October 27, the indictment was read and Castillo changed his plea to guilty. Zambrano filed a motion for mistrial, and he and Garza entered pleas of not guilty before the jury. All three of the defendants had previously elected the jury to assess their punishment. When Castillo asked to be permitted to change his election and have the judge assess the punishment, the prosecutor would not agree and was not required to do so. See Rojas v. State, Tex.Cr.App., 404 S.W.2d 30. At the close of the State's case, Zambrano and apparently Garza moved for a mistrial because the court had overruled Castillo's motion to sever. This was overruled.

Servance v. State, Tex.Cr.App., 433 S. W.2d 709, was an appeal from a joint trial. Rosemary Servance had entered a plea of guilty and Loftis a plea of not guilty. The Court held that her co-defendant was entitled to have a jury empaneled pursuant to Article 37.07, V.A.C.C.P., to pass upon guilt or innocence and hear the evidence introduced on such issue alone.

The Court noted that a different question is presented where both defendants upon arraignment plead not guilty and after a jury is empaneled and sworn under Article 37.07, V.A.C.C.P., and the indictment read, one of the co-defendants pleads guilty.

The Court held that absent a showing that the plea of guilty was first made after the jury had been empaneled pursuant to Article 37.07, supra, the failure of the court to afford Rosemary Servance a separate trial on the issue of punishment before a jury empaneled pursuant to Article 26.14, V.A.C.C.P., required reversal.

In Loftis v. State, Tex.Cr.App., 433 S. W.2d 704, a companion case to Servance v. State, supra, the defendant was forced to trial after he had entered a plea of not guilty with a co-defendant who had entered a plea of guilty. This Court held that where a motion for severance was not in compliance with Article 36.09, supra, the trial court did not err in overruling it.

The dissent in the Loftis case shared the concern of the majority over a situation where pleas of not guilty are entered for more than one defendant upon arraignment and after the indictment is read to the empaneled jury and such pleas entered, and one of the defendants changes his plea to guilty or nolo contendere. The dissent was of the opinion that the record showed Loftis had entered a plea of guilty at arraignment and, therefore, should have had a separate trial.

After this Court affirmed the Loftis case, there was an appeal of a habeas corpus proceeding. The Fifth Circuit Court of Appeals held in Loftis v. Beto, 450 F.2d 599 (1971), that any error in continuing with the joint trial under the facts of that case was harmless.

In the present case the jury had been empaneled for a trial under Article 37.07, supra, and one of the defendants wanted a trial pursuant to Article 26.14, supra.

To reverse this case because the trial court did not afford a separate trial to Castillo would be to allow one or more co-defendants to prevent a joint trial as they wished. The Legislature intended that there be, and provided for, joint trials. The procedure advocated by the appellants would make, in many cases, the provision for joint trials under Article 36.09, supra, a nullity.

Here, the appellants did not ask for a severance but moved for a mistrial. Their advocated procedure, if adopted, would allow the co-defendants to control the trial instead of the trial court. This was not intended by the Legislature.

■ We hold that no reversible error is shown in overruling the motions for mistrial or in causing the three co-defendants to be tried together under the circumstances of this case.

■ Lastly, the appellant Zambrano contends that the court erred in telling the jury that Garza voluntarily absented himself from the trial during the penalty stage. See Article 1.14, V.A.C.C.P., and Reed v. State, 172 Tex.Cr.R. 122, 353 S.W.2d 850. The jury should have been told why he was absent. We perceive no error.

The judgments are affirmed.[1]

1. This voluminous record consists of two Volume I consists of copies of the instruments filed with the district clerk, along with a part of the statement of facts or transcription of the court reporter's notes. Volume II consists of the rest of the statement of facts, including the exhibits, and the appellate briefs.
The clerk no doubt attempted to comply as far as possible with Article 40.09, Section 1, V.A.C.C.P., which provides for the record to be compiled under one cover.
However, there is no provision for binding the appellate briefs in the record. Often, as in this case, the record is on legal, and the briefs are on letter size paper. The briefs should not be made a part of the bound record. Sometimes when a large record is opened for study, it falls apart.
The provision that the record be under one cover is physically impossible to follow in some cases. When a record is eight inches to three feet thick, it would be difficult or impossible to read if under one cover.
Records, regardless of the number of pages, which are most convenient for the Court and its personnel are prepared somewhat like those before the 1965 Code was adopted.
It is recommended by this Court that:
1. The copies of the papers filed with the district clerk be Volume I (or more if necessary).

2. The statement of facts, or transcription of the court reporter's notes, be Volume II (or the next chronological number), and as many additional volumes as necessary to prevent them from being over 2½ or 3 inches thick.
3. The clerk number the pages, starting with the transcript, chronologically through the record, in addition to the numbers used by the court reporter in the statement of facts.
4. The entire record be approved by the court, as required by Article 40.09, supra. This may be done in the last volume of the statement of facts or by an order in the transcript with the volumes approved properly identified in the order.
5. The briefs should not be bound with the other parts of the record. They need not be in a separate volume or numbered.
There has been much confusion in how to prepare the records for appeal. The above has been written to be of assistance to the court as well as the clerks who have been attempting to follow Article 40.09, supra.
The mere fact that a record is not under one cover has not and will not affect the consideration of any ground of error or the outcome of the case.